The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Jones. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the addition of Findings of Fact Numbers 24 and 25, Conclusions of Law Numbers 5 and 6, and Award Number 5.
* * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and the defendant-employer.
3. The carrier on risk was Riscorp of North Carolina.
4. A Form 22 was submitted from which an average weekly wage would be determined.
5. At all relevant times, the employment relationship between plaintiff and defendant continues to this date.
6. Plaintiff was initially treated by Dr. Rodney Sessoms of Duplin Medical Center, Incorporated on or about 20 November 1995.
7. Dr. Sessoms referred Maria Dunham to Dr. John P. Surratt, a dermatologist, who remains Maria Dunham's treating physician.
8. The medical records that concern plaintiff were stipulated into evidence. These documents consist of: sixteen pages of medical records and billings from John P. Surratt, M.D.; four pages of medical documentation from Rodney Sessoms, M.D.; three pages of medical bills.
9. The issue before the Industrial Commission is whether plaintiff contracted an occupational disease while employed by the defendant-employer.
RULINGS ON EVIDENTIARY MATTERS
The objections contained in the deposition of Michael J. Donahue, M.D. are OVERRULED.
* * * * * * * * * * * *
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing of the above-captioned matter, plaintiff was forty-six years old having been divorced. Plaintiff has one daughter.
2. Plaintiff had previously been employed in various restaurants until 1991.
3. Plaintiff was not employed from 1991 through 1995. Prior to working for the defendant-employer, plaintiff was employed by a restaurant in Virginia.
4. In June of 1995, plaintiff was hired as a deli employee by the defendant-employer. Plaintiff's job responsibilities were to cook, clean the deli area, wash windows, and wash pots and pans as well as other cooking utensils.
5. On or about August 1995, plaintiff noticed her hands had become irritated, red, swollen and tender. Plaintiff made her supervisors aware of this condition and they provided her with lotions to address this problem.
6. Ms. Dunham's condition continued to worsen and she saw Dr. Rodney Sessoms. Dr. Sessoms recommended that plaintiff stay out of wet areas for a period of two weeks. Plaintiff continued to perform regular duties during the two week period.
7. When plaintiff's condition did not improve, plaintiff was referred to John P. Surratt, M.D., a board certified specialist in dermatology. Plaintiff's condition was diagnosed as being paronychia. Dr. Sessoms recommended plaintiff utilize cotton gloves inside rubber gloves any time she would come in contact with water. Because of the swelling and pain in her hands, plaintiff had difficulty wearing these gloves.
8. Because plaintiff would perspire while wearing the gloves, her condition would be aggravated by the wearing of gloves.
9. Plaintiff's work activities were restricted by Dr. Surratt to dry areas. Plaintiff was moved to work primarily in the produce department. However, her move included washing produce and putting produce on the shelves. As part of the activities required in performing the work in the produce department, plaintiff was required to lift boxes that weighed between thirty to fifty pounds. Because of plaintiff's condition, this activity would be extremely difficult.
10. Plaintiff's fingers remained infected and she lost several of her finger nails.
11. Plaintiff was required to remain in the produce department until a replacement could be found. Plaintiff resumed work in the deli, which included cleaning with water or liquid solutions, in order to increase her work hours.
12. Plaintiff was instructed to stay out of work for four weeks in order for her condition to improve.
13. Plaintiff was unable to afford medication prescribed by Dr. Surratt because she was out of work.
14. Plaintiff has remained out of work since 18 March 1996 with little or no change in her condition.
15. Chronic paronychia occurs in persons whose hands are constantly exposed to water and liquids.
16. Plaintiff's employment with the defendant-employer exposed her hands to water which was not sterile.
17. Plaintiff was at a higher risk of contracting this disease because of her employment with the defendant-employer.
18. Plaintiff made reasonable efforts to comply with the prescribed treatment for her hands based upon her circumstances.
19. Plaintiff is suffering from chronic paronychia which is characteristic to her occupation as a cook and dishwasher. The duties of this position either caused or significantly contributed to her condition.
20. Plaintiff's employment with the defendant-employer placed plaintiff at an increased risk of acquiring this disease as compared to members of the general public not so employed.
21. Plaintiff has been out of work and incapable of earning wages with the defendant-employer or any employment since 18 March 1996.
22. Plaintiff's average weekly wage is $153.76.
23. It has not yet been determined what, if any, permanent partial disability plaintiff may have sustained as a result of her acquisition of this disease.
24. The Deputy Commissioner did not abuse his discretion in allowing defendants' attorney an additional fifteen days in which to complete depositions.
25. Defendants have defended this case without reasonable grounds.
* * * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's contracting of paronychia was due to causes and conditions characteristic of and peculiar to her employment with the defendant-employer, is not an ordinary disease of life to which the general public not so employed is equally exposed, and is, therefore, an occupational disease. N.C. Gen. Stat. §97-53(13).
2. As a result of her contraction of this compensable occupational disease, plaintiff is entitled to temporary total disability at a rate of $102.56. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to all medical treatment which would effect a cure or relieve the pain from this occupational disease. N.C. Gen. Stat. § 97-25.
4. It has yet to be determined what, if any, permanent partial disability plaintiff may have sustained as a result of her acquisition of this occupational disease. N.C. Gen. Stat. §97-31.
5. Since defendants have defended this case without reasonable grounds, plaintiff is entitled to have the whole costs of this proceeding assessed against defendants. N.C. Gen. Stat. §97-88.1
6. Since plaintiff prevailed at the Deputy Commissioner level as well as on appeal to the Full Commission, plaintiff is entitled to the payment of interest at eight percent per annum on the unpaid due portion of the award from the date of the initial hearing on 15 August 1996. N.C. Gen. Stat. § 97-86.2
* * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. For her compensable contraction of an occupational disease, defendants shall pay temporary total disability compensation at a weekly rate of $102.56 as of 18 March 1996 and continuously thereafter until plaintiff is capable of returning to work or until further order of the Commission.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her contraction of a compensable occupational disease. Plaintiff is entitled to medical treatment which would effect a cure or provide relief for her compensable occupational disease.
3. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel, and shall be paid as follows: twenty-five percent of the sum due plaintiff under paragraph one of this Award shall be assessed against defendants and paid directly to plaintiff's counsel due to the fact that this matter was defended without reasonable grounds.
4. Defendants shall pay the costs.
5. Defendants shall pay to plaintiff interest at eight percent per annum on the unpaid due portion of this award from the date of the initial hearing on 15 August 1996.
* * * * * * * * * * * *
ORDER
Plaintiff's motion to assess a ten percent penalty against defendants pursuant to N.C. Gen. Stat. § 97-18(g) and (i) is hereby DENIED.
This the 8th of July 1997.
 S/ ______________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ____________________ COY M. VANCE COMMISSIONER
S/ ____________________ MARY MOORE HOAG DEPUTY COMMISSIONER
DCS:jmf